# Houston *v.* Farris & McCurdy.

*Bill in Equity to Establish Set-off against Judgment; Cross-Bill to enforce Trust in Lands.*

1. *Parol trust in lands.*—Under statutory provisions (Code, § 1845), a trust in lands can neither be created nor established by oral declarations.

2. *Express, resulting, and implied trusts; variance.*—Under a bill which seeks to enforce an express trust, or a trust resulting by operation law from the use by defendant of plaintiff's money in a purchase of land, defendant can not be declared a trustee *in invitum* on the ground that his use of the money was unauthorized.

3. *Same.*—Defendant having taken a fourth mortgage on a tract of land, to secure a debt due to himself and also a debt due to his sister, acting at her instance and as her agent, and having bought in the land at a sale foreclosing the prior mortgages, at a price exceeding the aggregate amount due on them ; the purchase enures equally to the benefit of his sister, at her election, ratably according to the amounts of their respective debts utilized in the purchase, or she may hold him liable in money for her part of the money so utilized, but she can not claim any advantage over him in the matter of the purchase.

APPEAL from the Chancery Court of Montgomery.

Heard before the Hon. JOHN A. FOSTER.

The original bill in this case was filed on the 2d May, 1884, by T. L. Farris and W. D. McCurdy, against Mrs. Mary J. Houston and her husband; and sought to enjoin a judgment at law which Mrs. Houston had recovered against them, and to have the judgment debt applied as assets in their hands of the insolvent estate of Robert F. Simonton, deceased, who was a brother of Mrs. Houston, and of whose estate said Farris and McCurdy were the administrators *de bonis non.* The facts out of which the controversy grew are fully stated in the opinion of STONE, C. J., on the first appeal (78 Ala. 250–58); and the facts since developed in the case are stated in his opinion on the present appeal.

WM. S. THORINGTON, for appellant.

TOMPKINS & TROY, *contra.*

[Houston v. Farris & McCurdy.]

STONE, C. J.—This is the third appeal in this case. When the case was first here—78 Ala. 250—we considered and passed on the equity of complainants' bill, and the state of the pleadings is set forth in the opinion rendered at that time. We need not repeat what is there said.

On the second appeal, Justice CLOPTON not being competent to sit in the case, there was a difference of opinion between Justice SOMERVILLE and myself, which rendered it necessary to have a special judge appointed. The case being decided by a special court, it never passed into the reports. The contention of Mrs. Houston at that hearing was, first, that R. F. Simonton, testator of Farris & McCurdy, held the title of the land in controversy in express trust for her benefit, and that, on this ground, complainant's suit must fail; and if, for any reason, this contention could not be maintained, then it was claimed, in the second place, that the purchase of the land had been made with Mrs. Houston's effects, and for that reason a trust resulted in her favor to have the title vested in her. Each of these contentions was decided against Mrs. Houston; the first, on the ground that the entire testimony offered in proof of the express trust consisted of oral promises and oral declarations made by testator. The statute of frauds had been pleaded, and we held that the testimony failed to take the case without its influence.—*Patton v. Beecher*, 62 Ala. 579. On the second ground we ruled, that neither the pleadings nor the testimony made good the claim of a resulting trust.—*Kelly v. Karsner*, 72 Ala. 106; *Bibb v. Hunter*, 79 Ala. 351.

When the case returned to the Chancery Court after the second reversal in this court, there was an entire change of purpose on the part of Mrs. Houston, complainant in the cross-bill. There was an amendment of her cross-bill, but not on any question we deem material to the final determination of this controversy. The purpose to claim the land, either as an express trust, or as a trust which results by operation of law, was abandoned, and the attempt was made before the chancellor, and is renewed here, to fasten upon R. F. Simonton and his estate the *status* of a trustee *in invitum* as to the note for $1,362.00 of principal. Mrs. Houston claims that, by investing her said note in the purchase of the Davidson land, Simonton thereby fastened a charge upon himself, secured by a lien upon the land, for the whole amount of the note and interest upon it.—*Preston v. McMillan*, 58 Ala. 84; *Tilford v. Torrey*, 53 Ala. 120; *McGowan v. McGowan*, 74 Amer. Dec. 688; s. c., 14 Gray, 119.

There are many reasons why we hold this contention is unsound. *First*, the pleadings, according to the averments of

Mrs. Houston's cross-bill (see 78 Ala. 250), aver that her note on Davidson was placed in the hands of R. F. Simonton, her brother, with express instructions from her and her husband, and on the understanding, that it should be used in the purchase of the Geo. L. Davidson land; and the testimony in its entirety shows these averments to, be true. The amended cross-bill, while it strikes out some of the averments as first made and filed, leaves those referred to above intact. The cross-bill amended, alike in its averments and prayer, remains a bill for the enforcement of a trust, express or resulting, of the whole land; and there is neither averment nor proof appropriate to the attempt now made to charge R. F. Simonton as a trustee *in invitum.*

*Second:* A trustee *in invitum,* or trustee *de son tort* (different names expressing the same thought), is one who acts without authority, or exceeds his authority, in some matter of fact or law.—1 Perry on Trusts, § 245; *Lee v. Lee,* 67 Ala. 406. Simonton was the agent of his sister, Mrs. Houston. He disobeyed no instructions of hers, and violated no duty enjoined by her. On the contrary, he obeyed instructions strictly, and did precisely what she and her husband agreed he should do. An agent following instructions does not, and can not, thereby make himself a trustee *in invitum,* or *de son tort.*

*Third:* Viewing the facts and circumstances in this case, and drawing legitimate inferences therefrom, we feel justified in announcing the following conclusions of fact: Davidson was indebted to Simonton in a large sum, and to Mrs. Houston and to a Mrs. Simonton, severally, in smaller sums. He had executed mortgages on all his property to other creditors, to secure them in other large debts, and thereby left in himself only his equity of redemption, to meet his other liabilities. Simonton desired security for the debt Davidson owed him, and procured from him a fourth mortgage on his lands previously mortgaged to others. But he did not take the security for himself alone. He provided, in the mortgage he took, equally for the security of his sister, Mrs. Houston, and of Mrs. Simonton. Davidson became a voluntary bankrupt, and the lands he had mortgaged became the only source from which the mortgage creditors could expect to realize their several demands. The other mortgage creditors proceeded to foreclose their several mortgages by bill in chancery, and obtained a decree for the sale of the land, Simonton being a party defendant to the bill. Simonton purchased the land at the sale under the decree, bidding $19,200, at which price it was knocked down to him; and the deed was made to him. After paying the older mortgages for the payment of which the lands

[Houston v. Farris & McCurdy.]

had been decreed to be sold, there was left an excess of purchase-money of over $2,200. In payment of this balance he was allowed to enter a credit of the amount on the debts secured by his mortgage, to-wit: the debt to himself, the debt to Mrs. Houston, and the debt to Mrs. Simonton.

Throughout this transaction, Simonton acted as the agent and friend of Mrs. Houston, and he did nothing he had not authority for doing. We' may go farther and say he did nothing that was not in direct promotion of her interest. In securing her claim in the mortgage he took for his own security, he placed her on an equality with himself in all that should be realized from that security, but he gave her no paramount right over his own. All that she can claim, under the pleadings and proof in this case, is, that she shall be allowed to share *pro. rata* with him in all that was realized from the property mortgaged.

We have said the mortgage taken by Simonton placed him and Mrs. Houston on a perfect equality. It results that, as Simonton purchased the property at the sale, using in part payment a part of her claim, this possibly armed her with the right and option to claim an interest in the land, commensurate with the amount of the Davidson note due her, which was utilized in the purchase. This, because of the relation they sustained to each other as joint mortgagees. But it was a mere option, which she was not compelled to assert. She had the equal right to acquiesce in the sale as one made solely to Simonton, and claim her share of the money. So, if Simonton, after purchasing the land, had sold it at a profit, we will not say that Mrs. Houston could not recover her *pro rata* share of the profit, if she made or makes timely application therefor. This case presents neither of these questions, for there is neither averment nor proof under which either of them can be considered. As the case is now presented and urged, we can only consider the extent of her claim as a money demand.

Several of the witnesses for cross-complainant testified that Simonton frequently stated that, when the incumbrances on the land were paid off, the land was to become the property of Mrs. Houston. These statements, being mere oral declarations, can confer on her no interest in the land.—*Patton v. Beecher*, 62 Ala. 579. If these witnesses are not mistaken, a plausible explanation of such declarations, and the motive which prompted them, may be found in the fact that Simontan esteemed himself a rich banker and was childless, while his sister, Mrs. Houston, was poor and had a large family. Possibly it was his intention to make her a present of the

plantation. This, however, does not appear to have been his understanding.

On the last trial before the register, the complainant in the cross-bill submitted as proof certain memoranda found among the papers of R. F. Simonton, and proved to be in his hand-writing. The memoranda relates to the Geo. L. Davidson plantation, the price at which it was purchased, and the proportion of the purchase-money contributed by each of the mortgagees, himself, Mrs. Houston, and Mrs. Simonton. In exhibit C is a statement that the cash paid on the land—that which went to the older mortgagees, Reese and McCall—was $16,917.33. The land was bought by Simonton at $12.00 per acre, making $19,200. In said exhibit C is this statement: "It is understood that all over $10.58 per acre will be divided between R. F. S., Isabella S. and J. H. Houston, in proportion to their notes." J. H. Houston was husband of Mrs. Houston, complainant in cross-bill. In exhibit D are these figures, which correspond with the amounts of the several notes held by Mrs. Simonton, R. F. Simonton, and Mrs. Houston: "1,350; 6,916; 1,362—9,628, total capital; profit, 2,240."

We have noticed the only point pressed in argument, and which we consider the only material point, and we find no error in the record. The decree of the chancellor must be in all things affirmed.

Each party having assigned errors on the one record before us, let each pay the costs of his own appeal in this court, and half the costs of appeal in the court below.

Affirmed.

CLOPTON, J., not sitting.