# Kelly *et al. v.* Browning *et al.*

*Bill in Equity to enforce a Trust.*

1. *Venue of suit; enforcement of trust.*—A bill in equity to enforce a trust in railroad property against non-residents, which alleges that the property consisted largely of real estate situated in the chancery district in this State, in which the suit is filed, sufficiently shows the jurisdictional facts required under section 3414, subdivision 2, which gives to the court jurisdiction against non-residents when the object of the suit concerns an estate of, lien or charge upon lands within the State, and under section 3421 of the Code of 1886, which provides that in case of non-residents, if the subject matter of the suit be real estate, whether it be the exclusive subject matter or not, the bill may be filed in the district where the same or a material portion thereof is situate.

2. *Same; same.*—Where a bill filed to have a trust declared on railroad property, by virtue of an agreement that respondents would effect a reorganization of the company, and cause new bonds to be issued to replace bonds delivered to them by complainants, and reissue stock to complainants in proportion to their former holdings,

[Kelly *et al.* v. Browning *et al.*]

avers that the parties are non-residents, that the company was a domestic corporation, and that its property mortgaged to secure the bonds delivered by complainants consisted largely of real estate situated in the chancery district in which the bill was filed, there are averred facts sufficient to give the chancery court in which the bill is filed, jurisdiction of the cause (Code of 1886, § 3414, subd. 2; § 3421).

3. *Equity pleading; multifariousness.*—Where in one aspect of a bill filed to enforce a trust in certain property, the complainant avers the purchase of the property by respondent in pursuance of an agreement between the parties, and sets forth complainant's interest in the property and asks that he be decreed such interest therein, and in another aspect of the bill complainant avers that respondent appropriated the trust property with a fraudulent purpose, in that instead of using it as provided in the agreement for complainant's benefit, he purchased the property in which the trust is sought to be enforced for himself, using complainant's funds in making the purchase, such bill is not multifarious.

4. *Enforcement of trust; proper party.*—A bill in equity seeking to enforce a trust growing out of the delivery of first mortgage bonds to K. and B., which avers that said bonds were illegally used by K., with the acquiescence of B., in the purchase of the trust property, sufficiently shows B.'s interest to make him a proper party.

5. *Trust funds used by trustee in purchase of property; rights of beneficiary.*—Where railroad bonds are obtained for the purpose of reorganizing the corporation and such bonds are used by the holder to get the title to the property in his own name, the beneficiary may fasten a trust upon the property, whether the holder of such bond refused *mala fide* to carry out the agreement, or purchased the property for the purpose of carrying it out and then refused to do so.

6. *Receiver's certificates; priority over bonds; agreement of bondholder.* Where, pending a suit to foreclose a mortgage securing bonds issued by a corporation, receiver's certificates are issued, with the consent of the bondholders, under an order of the court which directed that they should be a lien having priority over all other liens upon the property of the corporation, and such certificates, after having been used for the purposes for which they were issued, are afterwards paid. off and discharged by one of the holders of the bonds secured by the mortgage sought to be foreclosed, such bondholder is entitled to be reimbursed by the other bondholders, to the extent of their proportionate interest, but should himself be charged with his proportionate share of the benefit accruing to the bondholders, as the result of the payment of the receiver's certificates.

7. *Bill in equity to enforce a trust upon railroad property; when equity disclosed by the averments of the bill; facts of the case.*—On a bill filed to have a trust declared on railroad property, the following facts were averred: The complainants owned the majority of capital stock of said railroad company, and a majority of the first mortgage

[Kelly *et al.* v. Browning *et al.*]

bonds issued by said company and secured by a mortgage upon all of its property. The respondents, K. and B., owned a large proportion of the remaining bonds of said company. The complainants and the respondents entered into a contract for the acquisition of the railroad and for the purpose of effecting a reorganization of the company upon certain terms stipulated in the contract. To accomplish this purpose, the complainants, in accordance with the provisions of said contract and to be used in conformity thereto, delivered to a trustee named in the contract the bonds and shares of stock owned by them, such bonds and stock to be used by the defendants in carrying out the purposes of the contract. The defendants were bound, by the agreement above referred to, to bear the expenses of reorganization and issue to complainants new bonds and stock of the re-organized corporation in proportion to their former holdings. After such delivery of the bonds and stock, the trustee at the direction of the respondents, filed a bill in equity for the foreclosure of the mortgage made to secure said bonds, in which a decree of foreclosure and sale of the property was rendered. Pending the foreclosure suit, the respondents procured an order of the court allowing the issuance of receiver's certificates to the amount of $650,000, which should be a lien, and have priority over all other liens, upon all the property of the railroad company, the proceeds of such certificates to be used in repairing and operating said railroad, and in widening the guage as was provided in the contract between the parties; and, at the instance of the respondents, this order for the issuance of the receiver's certificates was so framed as to require that the receiver should first obtain the consent of the owners of said bonds for the issuance of the certificates; and it was further provided that the owners of said bonds, in the proportion in which they held them, should have the privilege of first taking said certificates. The respondent K. with the acquiescence of his co-respondent, B., proved up his ownership of the bonds which had been transferred to the trustee, as provided in said agreement, as well as his ownership of the other bonds owned by him, and thereby obtained the issuance to him of $620,000 of said certificates. At the instance and request of the respondents, the decree of foreclosure and sale of the property provided "that the proceeds of the sale, after deducting certain costs and charges, should be first applied to the payment of interest accrued, and afterwards to the payment of the principal of such receiver's certificates," and that the remainder of the purchase money, after the payment of a specific amount in cash, might be made in said bonds at the option of the purchaser. K., by reason of his holding· and controlling the bonds, transferred in accordance with the agreement, and because of the framing of the order for the receiver's certificates and the decree of foreclosures, which gave to the bondholders an advantage over all competition, was enabled to purchase, and did purchase, the railroad property at much less than its real value, and, after having acquired the property by using the bonds transferred by the complainants, re-

[Kelly *et al.* v. Browning *et al.*]

fused to carry out the agreement, and repudiated and refused to recognize complainants' rights. *Held*:

(1.) That the averments of said bill show that the complainants have an equitable interest in the property in the possession of K., which is enforceable in a court of chancery.

(2.) That the bill was not multifarious, though in one respect it showed an express trust arising from the contract, and in another a fraudulent use of complainants' assets by respondents in the payment of the property purchased at the foreclosure sale, to which K. took title in his own name.

(3.) That under the averments of the bill, B. was a proper party to the suit.

(4.) That the facts averred did not deprive the receiver's certificates of their character as first liens; since it did not appear that the proceeds from such certificates were not used in good faith for the improvement of the property and the operation of the road, and that in as much as the payment of the receiver's certificates by K. discharged a prior incumbrance upon the interest of those having an interest in the second lien, (the mortgage securing the bonds), the complainants were benefitted to the extent of their interest, and that, therefore, the complainants should re-imburse K. to the extent of their proportionate interest, and K. must be charged with his proportionate share.

APPEAL from the Chancery Court of St. Clair.

Tried before the Hon. S. K. McSPADDEN.

The original bill in this case was filed by Edward F. Browning, of the city of New York, J. Hull Browning, who lived in the State of New Jersey, and Ivey F. Thompson, a resident of Georgia, as administrator of the estate of Amos G. West, who was a citizen of the State of Georgia, against John Byrne and Eugene Kelly, both of whom resided in the city of New York. Ivey F. Thompson, one of the complainants, died, and the case was revived in the name of W. C. Bunn, who resided in Georgia, as administrator *de bonis non* of West. Eugene Kelly, one of the defendants, died, and the case was revived against Thomas Kelly, Eugene Kelly, Edward Kelly, D. F. Sullivan and Paul Fuller, as his executors, all of whom reside in the State of New York; and afterwards revived against the heirs at law of Eugene Kelly, who are and were also non-residents of the State of Alabama.

The defendants separately demurred to the original bill. This demurrer having been argued and submitted was sustained, and thereupon complainants filed an

amended bill, but struck out nothing from the original bill. The defendant Kelly refiled the original demurrer to the amended bill. On November 16, 1894, as is stated in the transcript, the complainants further amended their original bill. The defendant Kelly, refiled the original demurrer to the bill as last amended, and also interposed additional grounds of demurrer. The personal representatives and heirs at law of Mr. Kelly, being brought in after his death, interposed each of the grounds of demurrer relied upon by Mr. Kelly, and also demurred specially.

The averments of the bill, together with its amendments, and the purposes for which the bill was filed are sufficiently set forth in the opinion.

In the demurrer to the original bill, defendants, assigned eighteen grounds of demurrer, which were as follows : 1. That the bill failed to show what the interest of the complainants in the property was, and failed to give the court any information by which their interest could be ascertained. 2. That the bill failed to show what was to be done with the common stock on the re-organization, or what proportion the bonds and preferred stock of the new corporation was to bear to the common stock. 3. That under the contract set out in the bill no estate or interest in the property was conferred, and the defendants never agreed to acquire the property and convey any interest therein to complainants, or to hold it in trust for them. 4. That the bill showed that the complainants had no interest in the property, and it was not shown that the new corporation, from which they were to receive the securities and stock, was ever organized, or that the chancery court had any jurisdiction, when the corporation was organized, to require it to issue the securities to which the complainants were to be entitled ; and that it was not shown by the bill that the complainants could not be fully compensated by pecuniary damages. 5. That the bonds and stocks were delivered to the defendants for the purpose of securing control of the railroad company, and that defendants agreed to endeavor to obtain the reorganization, and if necessary, to use these bonds in payment for the property. That it appears from the bill that the receiver's certificates were issued with the knowledge and consent of the complainants, and were a

[Kelly *et al.* v. Browning *et al.*]

lien on the property superior to the bonds and stock delivered, and the property was sold for the satisfaction of the paramount lien of the certificates, and it was not averred that the property and franchises were of a value in excess of the amount of the paramount lien of the certificates ; nor was it averred that it was possible for the defendants to use the bonds in the purchase of the property, or that they were so used. That it is shown by the bill that neither the stock nor the bonds were or could be used to effect the reorganization ; that the stock and bonds became and were utterly valueless before any reorganization became possible, and that the consideration for the alleged promise wholly failed. 6. That it is shown that the defendant Kelly had not acquired the property pursuant to any contract or agreement with the complainants, but on the contrary he acquired it in open disregard and violation of the contract, and the remedy at law was full, adequate and complete. 7th and 8th. The seventh and eighth grounds are that complainant's remedy was in an action at law to recover damages. 9. That it appeared by the bill that the receiver's certificates mentioned, amounting to $650,000, became and were a lien on the property and franchises prior and superior to the estate and interests which it is averred complainants became entitled to under the contract, and the bill contains no offer to pay off or discharge this superior and paramount lien. 10, 11, 12. These grounds deny the right to vary the agreement of May 11, 1888, by any antecedent or contemporaneous parol agreements as is attempted in paragraph 6 of the bill. 13. This ground raises the question of jurisdiction, on the ground that it appears from the bill that the complainants and defendants are both non-residents of the State of Alabama, and the bill fails to show any jurisdiction over the subject matter. 14, 15, 16, 17, 18. These grounds present the objection that the contract is opposed to public policy, being an attempt on the part of the complainants, owning a majority of the stock and bonds of a public corporation, to place the same in the hands of third persons having no interest therein for their own benefit, to the exclusion of the other bondholders and stockholders of the corporation.

On the hearing of this demurrer the chancellor sustained the 4, 5, 6, 7, 8, 9, 10, 11 and 12 grounds, and overruled the others.

After the amended bill was filed, the defendant Kelly refiled the demurrers interposed to the original bill, and filed additional demurrers, assigning ten grounds, as follows : 1. That the bill, as amended, is a departure, and makes an entirely new cause. 2. That the bill as amended, alleged no facts which showed, or tended to show, any fraud or fraudulent contrivance or conduct on the part of the defendant Kelly, in the issue of the receiver's certificates by the circuit court of the United States, or the framing of the orders thereof. That the bill showed that these certificates were authorized and issued after the complainants became parties to that suit, and that it failed to show that the complainants ever objected to any of these orders, or to the issue of the certificates, or the manner of their disposition. 3. That the bill showed that the receiver's certificates could only have been issued by the consent of the parties. 4. That the bill showed that the defendant Kelly advanced and paid the sum of $520,125.15 for the use and benefit of the railroad property, and was thereafter compelled to pay the remainder of the $650,000 of certificates, with interest and costs. That by the bill, it is alleged that complainants were unable or unwilling to refund to defendant the sum so advanced by him, or to restore him to his original position. 5. That the bill showed that the sale of the railroad property was fairly made, and failed to show how the defendant procured or caused the property to be struck off and sold to himself, and failed to show how he could have exercised any control over the special master making the sale. 6. That the bill failed to show any fraud or fraudulent conduct on the part of defendant in the purchase of the property ; on the contrary, it appeared that the defendant was compelled to purchase the property to protect himself for the money advanced on the certificates, which was not provided for or contemplated by the agreement of May 11, 1888. 7. That the bill nowhere denied knowledge of and consent to the issue of the receiver's certificates by complainants. 8. That the bill showed that the certificates were not contemplated by the agreement of May 11, 1888, nor was it contemplated by that agreement that the defendant should pay anything over and above one-half of the costs, expenses and counsel fees, and that it was shown by the bill that the defendant had advanced

and paid $650,000, with interest, and other large sums, to purchase the railroad property, and the bill contained no offer to repay these sums, or any part thereof. 9. That by the original bill, complainant sought to reform and enforce the agreement of May 11, 1888, while the amended bill seeks to recover damages for the breach of it. 10. This ground sets up laches. In the demurrers of the executors there were assigned all the grounds assigned by their testator, Mr. Kelly, and in addition they assigned the want of jurisdiction in the court. The heirs at law relied upon all the grounds assigned, and the following additional ground : That the bill is inconsistent in this, that it seeks to charge certain property with a lien or trust by reason of the alleged conversion by Eugene Kelly of certain bonds delivered to him, and at the same time seeks an accounting for the proceeds of the alleged conversion.

On the submission of the cause on the demurrers, the chancellor decreed that they were not well taken, and overruled them. From this decree the defendants appeal, and assign the rendition thereof as error.

ALEX. T. LONDON and WALTER D. DENEGRE, for appellants.—1. The chancery court had no jurisdiction over the defendants or the subject matter. It is shown by the bill that the complainants and defendants are all resident citizens of the State of New York, and were, when the bill was filed, non-residents of the State of Alabama. This objection to the jurisdiction is specifically raised. The jurisdiction of the courts of chancery over non-residents is defined by section 3414 of the Code of 1886. Unless the complainants can establish that this suit is (1) within the general jurisdiction of a court of chancery, or in the words of the statute, "a case in equity," and (2) is one of the class designated by the statute, the chancery court has no jurisdiction.—*Sayre v. Elyton Land Co.*, 73 Ala. 85 ; *Holman v. Bank*, 12 Ala. 369 ; *Glover v. Glover*, 16 Ala. 440 ; *Iron Age Pub. Co. v. W. U. Tel. Co.*, 83 Ala. 498 ; *Galpin v. Page*, 18 Wall. 350 ; Field on Corporations, (Wood's ed.), § 329, note 3 ; *Camden &c. Co. v. Swede Iron Co.*, 32 N. J. L. 15 ; Freeman on Judgments, (3d ed.), §§ 567, 568.

2. The bill, as now amended, avers a delivery of the stocks and bonds in trust for the complainants, and a

conversion by Mr. Kelly, as their trustee, through the issue of the receiver's certificates. It must, however, be borne in mind, that the whole of this alleged trust rests, not on the contract, but upon the previous oral negotiation which resulted in making it. There is an attempt to allege an intention on the part of Mr. Kelly, in some way undisclosed, to use the receiver's certificates to convert to his own use the bonds and stock entrusted to the defendants. The issue of the certificates and their purchase by Mr. Kelly, it is said, was a fraudulent contrivance to convert to his own use the bonds and stock delivered to the Trust Company, as now alleged, in accordance with the contract of May 11, 1888, and by this contrivance he was able to buy the railroad. There are no facts alleged showing any fraud or fraudulent contrivance. It is not shown how any wrong was done by the application of Byrne and Kelly for the issue of the certificates. It`is not alleged that any fraud was practiced to procure the issue. There is no suggestion in the bill that the sum thus provided for was not essential for the purposes for which it was to be borrowed. It is nowhere stated that the certificates could have been disposed of, if the conditions imposed by the court had not been inserted in the orders. It is not denied that complainants knew of the terms of the orders and it is not denied that complainants consented to their issue, and there is no suggestion that they were sold for less than their par value. How could the issue of the receiver's certificates, and their sale at par to Mr. Kelly, or to any one else, be a fraud on the complainants? It is nowhere suggested that the issue of the certificates for $650,000 was not necessary, and having been authorized by the court, we submit that this will be conclusively presumed. If Mr. Kelly occupied a fiduciary relation, he has at most bought an incumbrance lawfully placed on the railroad property, and by the purchase of which he was not enabled to buy the property, but was compelled to do so for his own protection. Taking all the facts, the purchase of the certificates did not enable or tend to enable Kelly to convert the bonds and stocks. The averments of fact and the conclusions of the pleader, as contained in the bill did not constitute fraud, and not being admitted by the demurrer, fraud is not presumed.—*Flewellen v. Crane,*

[Kelly *et al.* v. Browning *et al.*]

58 Ala. 627; *Fort Payne Fur. Co. v. Fort Payne C. & I. Co.*, 96 Ala. 472; *Penny v. Jackson*, 85 Ala. 67; *Dickerson v. Winslow*, 97 Ala. 491; *Fogg v. Blair*, 139 U. S. 118.

3. No trust, express or implied, arose under the agreement of May 11, 1888, which can be enforced under the facts shown. We respectfully submit that the averments of the bill show that there is no express trust created by the agreement of May 11, 1888, which the court can here declare or enforce. It may be conceded that if the foreclosure sale had been made for the satisfaction of the bonds alone, and the defendant Kelly had used the bonds to make the purchase, or to secure an advantage to himself, he would have been a trustee of complainants to the extent of their interest under the contract. This would have been an express trust, and the measure of complainant's interest would have been determined by the agreement. But this is not what complainants seek, for it would require them to offer to refund to Mr. Kelly the amount of his own money which he advanced to purchase the receiver's certificates, as a condition precedent to their invoking the aid of a court of equity. What complainants are seeking is (1) to have a constructive trust declared because of an alleged wrongful use and conversion of the bonds by Mr. Kelly in violation of the agreement; (2) or to have a resulting trust declared; and (3) in the same bill, to have Mr. Kelly account for the value of the bonds as upon conversion. The essential elements of a constructive trust are not presented by the averments of the bill. The proof of the use of the trust fund must be clear and unmistakable.—2 Pom. Eq. Jur., § § 1044, 1049, 1051, 1052.

4. The whole theory of resulting trust is "that the trust funds at the time of the purchase, formed its consideration." The proof must be clear and convincing that the trust funds were used and the *cestui que trust* may elect whether he will take the funds with interest, or the property purchased.—*Tilford v. Torrey*, 53 Ala. 120; *Lehman v. Lewis*, 62 Ala. 129; *Winston v. Mitchell*, 87 Ala. 395. "The trust must be coeval with the deed," and "it is founded on the payment of the money."—*Coles v. Allen*, 64 Ala. 98; *Whaley v. Whaley*, 71 Ala. 159. The *cestui que trust* must elect. He can not act upon and adopt such parts of the transaction as are favorable, and repudiate the rest.—*Robertson v. Bradford*, 73 Ala. 116;

[Kelly *et al.* v. Browning *et al.*]

*Powell v. Powell*, 80 Ala. 11; *Creamer v. Holbrook*, 99 Ala. 52; *Woodstock Iron Co. v. Fullenwider*, 87 Ala. 584. If the *cestui que trust* elects to proceed against the trustee personally, he can not also proceed against the trust fund.—2 Perry on Trusts, § 843; *Barker v. Barker*, 14 Wis. 131; *Baker v. Disbrow*, 25 Hun 29; *Kennedy v. First Nat. Bank*, 107 Ala. 170; *May v. LeClaire*, 11 Wall. 217; *Oliver v. Piatt*, 3 How. 333.

5. If there was a conversion of the bonds on May 11, 1888, then the whole idea of a trust in the property must fail, for this would make the remedy at law clear; for seeking to recover their value would be an election to charge the trustee personally, and as complainants could elect, this election must be made by them, under all the authorities, *supra,* including those cited by their counsel. It is not denied that relief may be sought in the alternative, but we do deny that it can be where the two claim are inconsistent.—*Ward v. Patton*, 75 Ala. 207; *Caldwell v. King*, 76 Ala. 149; *Winston v. Mitchell*, 93 Ala. 554.

6. The contract sought to be enforced is against public policy, and will not be enforced, nor will it be made the basis of any action by a court of equity. The directors and controlling stockholders could not make a lawful contract to turn over the control and management of the corporation to third persons, or contract for their own advantage in violation of the duty they owed the company, and the other stockholders and bondholders. *Woodstock Iron Co. v. Extension Co.*, 129 U. S. 643; 1 Morawetz Corp., §§ 517, 518, 519; *Guernsey v. Cook*, 120 Mass. 501; *Bliss v. Matteson*, 45 N. Y. 26; Meacham on Agency, § 29; *Attaway v. Bank*, 19 Amer. & Eng. Corp. Cases, 148; *Noel v. Drake*, 42 Amer. Rep. 162; *Noyes v. Marsh*, 123 Mass. 286; *Cone v. Russell*, 21 Atl. 847; *West v. Camden*, 135 U. S. 507; *Richardson v. Green*, 133 U. S. 30; *Berryman v. Cincin. So. R. Co.*, 14 Bush 755; *Moses v. Scott*, 84 Ala. 608; *M. & C. R. R. Co. v. Woods*, 88 Ala. 630; *Converse v. Hood*, 149 Mass. 471.

7. The amendments are a departure from the case made by the original bill, and are inconsistent with it. The original and amended bills each alleged and showed a sale and delivery of the bonds, and the trust was based on the alleged sale, while by the last amendments it is attempted to set up a wrongful conversion and

[Kelly *et al.* v. Browning *et al.*]

misuse of these same bonds and to have a trust declared by reason of Mr. Kelly's conduct subsequent to the purchase of the railroad. By the amendments last made complainants now ask for a decree for the value of the bonds and stock when delivered to defendants, and at the same time seek to fix a trust on the railroad property, on the proportion described by the contract of May 11, 1888, not by reason of a sale, but because of an alleged conversion. It is not denied that a bill may be filed seeking relief on alternate averments; the only limitation is that each alternative must entitle complainant to the same relief, and the same defenses must be applicable to each.—*Micou v. Ashurst*, 55 Ala. 607; *Gordon v. Ross*, 63 Ala. 363; *Ward v. Patton*, 75 Ala. 207; *Caldwell v. King*, 76 Ala. 149; *Globe Iron &c. Co. v. Thacher*, 87 Ala. 458; *Park v. Lide*, 90 Ala. 246; *Winston v. Mitchell*, 93 Ala. 564. The authorities cited and quoted from, by the same counsel for the complainants in their brief below, assert and establish the proposition, that if there was any trust relation that the *cestui que trust* has the option to follow the property into which his property has been converted, or to take the value in money of his property at the time of the conversion, but no case has been, nor do we think can be, cited holding that he can do both in the same bill.—Story's Eq. Jur., § 1262; *May v. LeClair*, 11 Wall. 217; *Oliver v. Piatt*, 3 How. 333. If the bill with the last amendment will bear the construction sought to be put upon it by complainants' counsel, it is a clear departure from the original and amended bills and should not be permitted, for it introduces a new cause of action and prays for different relief.—*Bolman v. Lohman*, 74 Ala. 507; *Parsons v. Johnson*, 84 Ala. 254; *Johnson v. Durner*, 88 Ala. 580.

FRED S. FERGUSON, WAGNER SWAYNE and J. W. INZER, *contra*.—1. Neither the amended bill of complaint, filed August 15, 1894, nor the amendments thereto, filed November 16, 1894, are a departure from the original bill of complaint, but are and were amendments permissible under the Alabama Code. The rule as to allowing amendments, under the practice of this State is well stated in the recent case of *Sav. A. & M. Railway Co. v. Buford*, 106 Ala. 303. The amended bill is not a radical departure from the cause of action stated in the original

bill. The right of the complainants, upon they rely to maintain the bill, is the same, to-wit, the original ownership of certain stocks and bonds; the contract or agreement sued upon is the same, both as to the written contract and as to the contemporaneous parol agreement; the state of facts alleged and upon which relief is predicated, to-wit, the purchase of the property and franchises of the railroad company by the defendant, Kelly, for his own use and benefit, are the same, the facts being enlarged so as to meet a state of facts authorizing relief, but relating to the same transaction to the same subject matter already in issue; the gravemen of the action is the same in both bills, to-wit, the effectuation of the contract and agreement and the realization of the complainant's rights in the same property. The relief prayed for is of the same general character, varying only in extent; the prayer being now in the alternative for the enforcement of a resulting trust and lien on the lands, as well as, or instead of, a specific interest in such lands, and such a variation of relief is, as shown by several of the cases above stated, a change of the extent and not of the general character or kind of relief; and, lastly, the defenses applicable to the state of facts in both bills are the same.—*Winter v. Quarles*, 43 Ala. 692; *Moore v. Alvis*, 54 Ala. 356; *Ingraham v. Foster*, 31 Ala. 123; *Larkins v. Biddle*, 21 Ala. 252; *Gardner v. Pickett*, 46 Ala. 191; *Marshall v. Olds*, 86 Ala. 296; *Pitts v. Powledge*, 56 Ala. 147; *Bolman v. Lohman*, 74 Ala. 507; *Ray v. Womble*, 56 Ala. 32; *Adams v. Phillips*, 75 Ala. 461; *Ward v. Patton*, 75 Ala. 207; *Parsons v. Johnson*, 84 Ala. 254; *Fite v. Kennamer*, 90 Ala. 470; *Mobile Sav. Bank v. Burke*, 94 Ala. 125; *Hawkins v. Pearson*, 96 Ala. 369; *Baker v. Graves*, 101 Ala. 247; *Milner v. Stanford*, 102 Ala. 277; *Scheerer v. Agee*, 106 Ala. 139; *Winston v. Mitchell*, 93 Ala. 554.

2. The bill as amended does not seek, in the alternative, inconsistent relief. The double aspect or alternative character of the bill as amended arises, if at all, from the state of facts already referred to, to-wit; that on the one hand it sets forth a contract and agreement whereby in consideration of certain stocks and bonds, then delivered to them, or placed under their control, the defendants agreed to reorganize a certain railroad company and redeliver to the complainants certain

[Kelly *et al.* v. Browning *et al.*]

stocks and bonds of the new corporation, a purchase of the property and franchises of the said railroad company by the defendant, Kelly, individually, and a refusal to reorganize said company or comply with said contract and agreement, and asserts a trust in said property and seeks to establish an interest therein and have the same conveyed to the complainants ; and, that, on the other hand, alleging the same contract and agreement, it asserts that with the acquiescence of the defendant, Byrne, the defendant, Kelly, was, by virtue of the possession and control of the stocks and bonds so entrusted to him, enabled to fraudulently purchase the property and franchises of said railroad individually ; and that upon his refusal to carry out and comply with said contract and agreement, a compulsory trust arose in favor of the complainants to the extent of the value of the stocks and bonds so entrusted to the defendants ; and prays for an accounting as to the value of such securities and lien for the enforcement of such trust in the amount of such value and interest.   These facts are not alleged in the alternative in the bill as amended, but are set forth as one narrative. It will be observed, however, that so far as the facts set forth are concerned, they are all proper constituent parts of one cause of action. The alternative character of the bill as amended arises, if at all, from the special prayers which are, on the one hand, for the recovery of an interest and estate in certain real property, and on the other hand for an accounting as to the value of certain securities and a trust in and lien upon said land for such value.   Admitting that the bill presents an alternative statement of fact as well as stated alternative prayers, and it is yet manifest that the facts stated in the two alternatives are not repugnant to, or inconsistent with, each other in the sense that if the one be found to be true the other can not be, and that the relief to which plaintiff would be entitled under either aspect is of the same general kind or character, differing in degree or extent, but not in substance.   This appears from the specific cases cited, as well as those cited above under the preceding proposition.   The enforcement of an interest or estate in lands, or of a trust and lien for the securities advanced for or which have been converted into the lands, are reliefs of a similar character under the decisions.—*Micon v. Ashurst*, 55 Ala. 607 ; *Andrews v.*

[Kelly *et al.* v. Browning *et al.*]

*McCoy*, 8 Ala. 920; *David v. Shepard*, 40 Ala. 587; *Warehouse Co. v. Jones*, 62 Ala. 550; *Rapier v. Gulf City Paper Co.*, 67 Ala. 482; *Lehman v. Meyer*, 67 Ala. 396; *Moog v. Talcott*, 72 Ala. 210; *Tatum Bros. v. Walker*, 77 Ala. 563; *Watts v. Frazier*, 80 Ala. 186; *Park v. Lide*, 90 Ala. 246; *Gordon v. Ross*, 63 Ala. 363; *Tillman v. Thomas*, 87 Ala. 321; *Caldwell v. King*, 76 Ala. 149; *Globe Iron &c. Co. v. Thacher*, 87 Ala. 458; *Seals v. Robinson*, 75 Ala. 363; *Ward v. Patton*, 75 Ala. 207; *Stein v. Robertson*, 30 Ala. 286; *Adams v. Sayre*, 70 Ala. 318; *Fields v. Helms*, 70 Ala. 460; *Proskauer v. Bank*, 77 Ala. 257.

3. If the apparent double character of the bill arises only from the prayers for relief, it would not be objectionable, even conceding that the special prayers were inconsistent.—*Lyons v. McCurdy*, 90 Ala. 497; *Florence Gas, &c., Co. v. Hanby*, 101 Ala. 27.

4. The bill as amended is not multifarious. Multifariousness is contended to exist in the bill as amended, not only on account of the alleged inconsistency of the facts stated and prayers for relief, but also because the bill as amended seeks to reform, and, at the same time, enforce the contract therein set forth, and because the interest of the defendant Byrne in the subject matter of the action is not co-extensive with that of his co-defendants. Upon the first branch of this question, it has appeared from the cases above cited, that the amended bill in this case is not inconsistent or multifarious. The same will appear from the following additional cases : *Chapman v. Chunn*, 5 Ala. 397; *Colburn v. Broughton*, 9 Ala. 351; *Horton v. Sledge*, 29 Ala. 478; *Bean v. Bean*, 37 Ala. 17; *Marsh v. Richardson*, 49 Ala. 430; *Alexander v. Rea*, 50 Ala. 450; *Junkins v. Lovelace*, 72 Ala. 303; *Seals v. Pheiffer*, 77 Ala. 278; *Tutwiler v. Tuskaloosa, &c., Coal, &c., Co.*, 89 Ala. 391; *Bullock v. Knox*, 96 Ala. 195; *Stone v. Ins. Co.*, 52 Ala. 589. A bill is not multifarious which unites several matters distinct in themselves, but which, together make up the complainant's equity, and are necessary to complete relief.—*Lewen v. Stone*, 3 Ala. 489; *Carpenter v. Hall*, 18 Ala. 439; *Quarles v. Quarles*, 19 Ala. 363; *McCarthy v. McCarthy*, 74 Ala. 546; *Florence Gas, &c., Co. v. Hanby*, 101 Ala. 15; *Lee v. Lee*, 55 Ala. 590; *Morris v. Morris*, 58 Ala. 443. To be multifarious, then, the bill must relate to distinct and wholly unconnected matters, and this must appear not only in

the statements of facts, but in the prayer for relief. The bill in this case, as amended, all relates to one subject matter, to one transaction, and has but one object; and the alternative character of the relief sought, if any, does not render the bill multifarious. But it is contended by the ninth ground of the additional demurrer of Eugene Kelly and the third ground of the demurrer filed by Kelly's heirs, that by the amended bill the cause of action is changed to one for damages for the conversion of the stocks and bonds set out in the bill, and hence sets up in the alternative a case for legal, and not equitable relief, and is on that account multifarious. This is not the law.—*Wilkinson v. Bradley*, 54 Ala. 677; *Baines v. Baines*, 64 Ala. 375; *Yarborough v. Avant*, 66 Ala. 526; *Winston v. Mitchell*, 93 Ala. 554; *Larkins v. Biddle*, 21 Ala. 252; *Wedgworth v. Wedgworth*, 84 Ala. 274.

5. The court of chancery acquired and had jurisdiction of the persons of the defendants and of the subject matters of the action.—Code of 1886, §§ 3414, 3421.

6. The defendant, John Byrne, is a necessary and proper party defendant to this action. He is a necessary party to the determination of complainants' interest in or lien upon the land set out in the bill, in order that his interest therein may be concluded by any decree rendered in favor of complainants. Byrne is jointly liable with Kelly for the breach of trust alleged in the bill, and hence for the performance of any decree that may be rendered.—*Batre v. Auze*, 5 Ala. 173; *Prout v. Hoye*, 57 Ala. 28; *Perkins v. Coal Co.*, 77 Ala. 403; *Taylor v. Roberts*, 3 Ala. 83; *Royall v. McKenzie*, 25 Ala. 363; *Hinson v. Williamson*, 74 Ala. 180; *Hooper v. S. & M. R. R. Co.*, 69 Ala. 529; *Allen v. Young*, 88 Ala. 338; *Birmingham Nat. Bank v. Roden*, 97 Ala. 404.

7. The bill as amended, shows the contract to have been a trust. A clearer case of the transfer of title to one person for the use and benefit of another who retains and has the equitable ownership could not well be imagined.—*Sledge v. Clopton*, 6 Ala. 589; *Pool v. Cummings*, 20 Ala. 563; *Creswell v. Jones*, 68 Ala. 420; *Belcher v. Sanders*, 34 Ala. 9; *McCarthy v. McCarthy*, 74 Ala. 546.

COLEMAN, J.—The appellees, Browning and others, filed their bill in the chancery court, and upon a de-

murrer being sustained, filed an amended bill, as a substitute for the original bill. The amended bill was subsequently amended, to which the respondents demurred, assigning several grounds of demurrer. The court overruled the demurrer to the amended bill as amended, and from this ruling overruling the demurrer, the respondents appeal and assign the same as error.

In its present condition the bill shows that in and prior to the year 1886 the East & West Railroad Company, a corporation, incorporated under the laws of Alabama, had issued seventeen hundred and fifty first mortgage bonds, of one thousand dollars each, secured by a first mortgage on all the property of said corporation, and of these, complainants were the owners of nine hundred and sixty-six, and that the respondents, or Eugene Kelly, owned a large proportion of the remainder of said bonds. The bill shows that complainants were the owners of 6,000 shares of the stock of said railroad corporation. In 1888 one James W. Schley, a judgment creditor of said railroad corporation, filed a bill in equity in the United States Circuit Court for the Southern Division of the Northern District of Alabama, in which he sought to set aside and annul the said mortgage bonds, and to subject the railroad property to the satisfaction of his judgment. A receiver was appointed, who took charge of said railroad pending this controversy. Under these circumstances, the complainants and respondents entered into the following agreement:

"This agreement made the 11th day of May, one thousand, eight hundred and eighty-eight, by and between Edward F. Browning and J. Hull Browning, of the City of New York, and Amos G. West, of Cedartown, in the State of Georgia, parties of the first part, and John Byrne and Eugene Kelly, of the said City of New York, parties of the second part,

"Witnesseth whereas, the parties of the first part are the owners and holders of $966,000 at par value of the consolidated bonds of the East & West Railroad Company of Alabama, and a majority of the shares of the capital stock of said railroad company.

"Now, therefore, in consideration of the mutual covenants and agreements hereinafter stated and the payments to be made upon the conditions hereinafter speci-

[Kelly *et al.* v. Browning *et al.*]

fied, the said parties have agreed and do hereby agree each with the other as follows, that is to say:

"First. The parties of the first part hereby agree to sell, alien and release, and do hereby sell, alien and release unto the parties of the second part all their right, title and interest in and to the said $966,000 at par value of said consolidated bonds and the coupons thereto attached, and all of said shares of said capital stock held by them, being not less than six thousand shares, and hereby agree to deliver the same to the parties of the second part upon the terms, in accordance with the provisions, and in the manner hereinafter specified.

"Second. The parties of the second part hereby agree to endeavor to obtain the reorganization of said railroad company, and to cause said railroad company, or its successor company, to issue new bonds to be known as first mortgage bonds in lieu of said consolidated bonds, upon such plan of reorganization as may be in their opinion most expedient and proper, and to save harmless the parties of the first part from all assessments, costs, charges and expenses whatever in connection with such reorganization, or any proceedings, actions or suits at law or in equity with reference to the said bonds or stock, or any portion thereof, except as hereinafter provided; and upon the completion of said reorganization, and as soon as the said railroad, its property and franchises, are in the full possession and control of said railroad company which may be formed under and for the purpose of carrying out such plan of reorganization, and upon the discontinuance of any and all proceedings, actions or suits at law or in equity which may be now pending, or which may be hereafter instituted, with reference to said property or said bonds or stock, or any portion thereof, and as soon as the securities and stock to be issued under such plan of reorganization shall be ready for delivery, the parties of the second part shall pay and deliver, or cause to be paid and delivered, to the parties of the first part for the said consolidated bonds and stock hereby sold securities to be issued under such plan of reorganization as follows:

"1. In case the total amounts of said new bonds to be issued under such plan of reorganization shall be one million, five hundred thousand dollars five per cent. first mortgage bonds, then the parties of the first part are to

receive and the parties of the second part are to pay and deliver, or cause to be paid and delivered, to the parties of the first part $416,000 at par value of said new bonds, and $600,000 at par value of preferred stock out of $700,000 at par value of preferred stock to be issued under such plan of reorganization.

"2. In case the total amount of said new bonds to be issued under such plan of reorganization, shall be one million, two hundred thousand dollars five per cent. first mortgage bonds, then the parties of the first part are to receive and the parties of the second part are to pay and deliver, or cause to be paid and delivered, to said parties of the first part $333,000 at par value of said new bonds, and $683,200 at par value of preferred stock to be issued under such plan of reorganization. It being generally understood that the several aggregate amounts of issues of new bonds hereinafter mentioned are upon the basis of a narrow-gauge railroad, as the said railroad is now operated; that said new bonds shall not exceed the rate of $12,500 per mile of narrow-gauge road, and that in case the gauge shall be widened to the standard gauge, the aggregate amount of said new bonds to be issued may be increased not to exceed the rate of $2,500 per mile.

"It is also further mutually understood that in case that said preferred stock cannot be legally issued, or shall not be issued under said plan of reorganization, then the parties of the second part shall pay to the parties of the first part in lieu of said preferred stock so to be paid to them, as hereinafter provided, such securities other than first mortgage bonds as may be issued under such plan of reorganization, to be paid in such amounts as may be determined by arbitration in the manner hereinafter provided.

"Third. In case any portion of said $966,000 at par value of said consolidated bonds hereby sold to the parties of the second part by the parties of the first part, not exceeding $550,000 at par value, shall be adjudged invalid by any court of last resort· having jurisdiction thereof, then· the parties of the first part shall be entitled to receive only such proportion of said preferred stock, to be paid and delivered to them as hereinbefore provided, as the proportion of said amount of $550,000 at par value of said bonds adjudged by such court to be

valid shall bear to the total amount of such preferred stock so to be paid and delivered to said parties of the first part. And in case any portion of the remainder of said $966,000 at par value of said consolidated bonds, being $416,000 at par value, shall be adjudged invalid by such court, then the parties of the first part shall be entitled to receive only such proportion of such new bonds, to be received by them as hereinbefore provided, as the proportion of such consolidated bonds adjudged by such court to be valid shall bear to the total amount of new bonds so to be received by the parties of the first part.

"Fourth. It is mutually agreed by and between the parties hereto that all costs, expenses or counsel fees incurred in or by reason of any litigation that might arise with reference to the subject matter of this agreement, other than or in addition to the costs, expenses and counsel fees which the court may direct to be paid, or which may be paid out of the proceeds of the sale of said railroad, in case a sale thereof be had, or which may be paid by said railroad company, shall be divided between the parties hereto in proportion to the value of their holdings, respectively, upon the payment and delivery of their securities to be paid and delivered by the said parties of the second part to said parties of the first part as hereinbefore provided.

"Fifth. It is mutually agreed by and between the said parties, that immediately upon the execution of this agreement the parties of the first part shall deliver to the American Loan & Trust Company, of New York City, the securities and stock hereinbefore mentioned, and hereby sold by them, to be held by said trust company as trustee, for the purposes of this agreement.

"Sixth. That the parties of the first part hereby agree that whenever the parties of the second part shall so request they will place the parties of the second part in control of the Board of Directors of said railroad company, by causing the resignation of the several directors controlled by them and the election to such vacancies, as they severally occur, of persons to be designated by the parties of the first part.

"Seventh. In case any dispute shall arise between the parties hereto, in reference to the construction or effect of any portion of this agreement, or anything con-

nected with the subject matter thereof, the same shall be settled and adjusted by arbitration, of whom each of the parties hereto shall select one, and in case of any disagreement of said arbitrators so chosen, the arbitrators shall have the power to select a third, and the decision of any two of said arbitrators shall be final, conclusive and binding upon the said parties.

"In witness whereof the parties hereto have set their hands and seals the day and year first above written.

"B. F. Browning, (L. S.)<br>
"J. Hull Browning, (L. S.)<br>
"Amos West, (L. S.)

"By J. Hull Browning, his Attorney in fact.

"John Byrne, (L. S.)<br>
"Eugene Kelly, (L. S.)"

"Witness:
Frank Sullivan Smith."

The bill avers that in pursuance of said agreement, and to be used in conformity thereto, complainants delivered to The American Loan & Trust Company the said nine hundred and sixty-six consolidated mortgage bonds and six thousand shares of stock, subject to the control of said respondents and which were availed of by them and subsequently, by Eugene Kelly, one of the respondents, with the acquiescence of his co-respondent Byrne, for his individual and separate benefit "as hereinafter set forth." The bill shows that The American Loan & Trust Company, at the direction of the respondents, filed a bill in equity for the foreclosure of the mortgage made to secure said consolidated bonds, and that the suit of Schley, said judgment creditor, and also a suit of Grant Brothers, were consolidated with the foreclosure suit, and that at the hearing, the bills of complaint of said Schley and of Grant Brothers were dismissed, that the mortgage bonds were declared and held to be valid, and a decree of foreclosure and sale of the property rendered.

The bill shows that at the reference held in the foreclosure suit, the respondents claimed and proved up their ownership of said bonds, which had been transferred to The American Loan & Trust Company as provided in said agreement.

The bill further shows that pending the foreclosure

suit, the respondents procured an order of the court, to the effect that the receiver should issue receiver's certificates to the amount of six hundred and fifty thousand dollars, which should be a lien, and have priority of all other liens, upon all the property of said railroad corporation, the proceeds thereof to be used in repairing and operating said railroad, and in widening the gauge as provided in said agreement; and it is averred, that respondent's procured the order for issuing said receiver's certificates to be so framed that the receiver should first obtain the consent of the owners of said bonds, and that the owners of said bonds, in the proportion in which they held them, should have the privilege of first taking said certificates. The bill avers that under these provisions in the order authorizing the issue of said receiver's certificates, the respondent Kelly, with the acquiescence of his co-respondent Byrne, proved up the ownership of said nine hundred and sixty-six bonds, as well as other bonds owned by himself, and thereby obtained the issue to him of six hundred and twenty thousand dollars of said certificates. The bill further shows that at the instance and request of said respondents, the decree of foreclosure and sale of the property provided "that the proceeds of the sale, after deducting certain cost and charges, be applied first to the payment of interest accrued, and afterwards to the payment of the principal of said receiver's certificates," and that the remainder of the purchase money, after the payment of a specified amount in cash, might be made in said consolidated bonds at the option of the purchaser. The bill avers that the respondent Kelly bid off the property for himself, took the title in his own name, and now has possession and claims the property as his own.

The pleader concludes from the facts stated, that Kelly by reason of his holding and control of said 966 consolidated bonds, and the framing of the order for receiver's certificates, and the decree of foreclosure, which gave to the bondholders an advantage over all competition, was enabled to purchase, and avers as a fact that he did purchase, the railroad property at much less than its real value, and after having acquired the property at much less than its value by using the consolidated bonds transferred by complainants, refuses to carry out the agreement and repudiates and refuses to recognize complain-

ants' rights. The bill shows that the parties are non-residents, that the railroad corporation was a domestic corporation, that its property conveyed by the mortgage to secure the bonds consisted largely of real estate, situated in the chancery district in which the bill was filed, that this property was included in the decree of foreclosure and purchased by the said Kelly and in part at least is the subject of the suit. It avers, as a conclusion from the facts, that the agreement was to be performed in Alabama.

We have not undertaken at present to state in detail all the averments of the bill, but only so much as we deem necessary for the consideration of those grounds of demurrer directed against the maintenance of the suit. Other averments will be considered hereafter in connection with the causes of demurrer assigned against certain features of the bill.

Appellants contend, that as the bill shows that all the parties are non-residents, there are no averments of fact, which give jurisdiction. Section 3414, subdiv. 2 of the Code of 1886, reads as follows : "Against non-residents, when the object of the suit concerns an estate of, lien or charge upon lands, or the disposition thereof, or any interest in, title to or incumbrance on personal property within this State, or where the cause of action arose, or the act on which the suit is founded, was to have been performed in this State." Section 3421 of the Code provides that "in case of non-residents [the bill must be filed] in the district where the subject of the suit, or any portion of the same, is, when the cause of action arose, or the act on which the suit is founded was to be performed ; or if the real estate be the subject matter of the suit, whether it be the exclusive subject matter of the suit or not, then in the district where the same or a material portion thereof, is situated." If the other averments of the bill are such as to show that complainant is entitled to equitable relief, those relative to the jurisdictional facts required by the statute, in cases of non-residents, are sufficiently pleaded.

· Appellants further contend that the agreement of the parties of May 11th, 1888, did not impose any absolute obligation to effect a reorganization as therein provided, but that they only obligated themselves "to endeavor to obtain the reorganization of said railroad company,"·

and that the court is without power to enforce specific performance of such reorganization. We need not decide this question. It seems evident that if the facts averred in the bill are true, and which the demurrer admits to be true, there is nothing to prevent the respondents from performing their undertaking and effecting a reorganization according to the terms of their agreement. The voluntary refusal of respondents to carry out their agreement, cannot avail to their benefit and to the injury of complainants without fault on the part of the complainants. Were it impossible to reorganize the corporation, this would not authorize the respondents to use the funds of complainants, as the bill avers they were used, in the purchase of property freed from all equitable right of complainants. The bill avers that under and by virtue of the agreement, the appellants acquired from complainants the control and in effect the legal ownership of a majority of the consolidated bonds of the railroad corporation and shares of stock, to be used by them for certain purposes, specified in the agreement. The bill shows that respondents did make use of the bonds to procure a decree of forclosure and sale of the property. That they were used to obtain an advantage in the acquisition of receiver's certificates— that the decree of foreclosure and sale of the property gave to the holders of the bonds such an advantage as to shut out all competition and bidding, and that Eugene Kelly, with the acquiescence of Byrne, availed himself of these advantages, by the use of the bonds obtained under the agreement from complainants, to purchase the property at a price greatly less than its real value. It is fairly inferable that without the control of the bonds, he could not have purchased the property on such terms. The bill and the agreement show, that it was contemplated by the parties that respondents might purchase the property to effect a reorganization of the corporation. We are satisfied that if the averments of the bill be sustained by the evidence, that complainants have an equitable interest in the property purchased by Kelly, and that without regard to the *bona fides* of his intention in procuring the issue of receiver's certificates, or the decree of foreclosure of sale, or the purchase of the property. If these steps were taken by him and property purchased in good faith to carry out the agreement, and

he refuses now to perform it, in a court of equity he holds the property in trust for the complainants to the extent of their proportionate interest. If these proceedings were taken apparently in good faith with the secret purpose on his part to defraud complainants, it will avail him nothing. Having succeeded in purchasing the railroad and taking the title to himself under his agreement with complainants, acting in the capacity of agent or trustee and by the use of their property, he is in equity a trustee. The bill is not rendered multifarious for the reason that it may aver these acts of respondents to have been done in furtherance of the agreement or with a fraudulent intent. It does not seek to set aside the transfer of the bonds, nor the decree of foreclosure, nor the purchase by Kelly. Its purpose is to have a trust declared upon the property in favor of complainants, to the extent of their interest. A bill is not necessarily multifarious, which is one aspect, shows an express trust arising from contract, and in another, a purely resulting trust, and in another, the use of the assets of a *cestui que trust* by a trustee in payment of property to which he took title in his own name, although the rights of the party whose money was used are not subject in all respects to the same principles of law. In either case, the object of the bill may be single, the subject matter the same, and appropriate prayer for relief to the several aspects would be inconsistent. We think these principles have been settled in the following cases : *Preston v. McMillan*, 58 Ala. 84 ; *Foley v. Leva*, 101 Ala. 395 ; *Houston v. Farris*, 93 Ala. 587 ; *Winston v. Mitchell*, 92 Ala. 555 ; *Tilford v. Torrey*, 53 Ala. 120 ; *Ellison v. Moses*, 95 Ala. 221, 227 ; *Whaley v. Whaley*, 71 Ala. 159 ; *Parker v. Jones*, 67 Ala. 234 ; *Lehman v. Lewis*, 62 Ala. 129.

In one aspect of the bill, complainants show the purchase of the railroad by Eugene Kelly in pursuance of the agreement and their right to a proportionate share, and ask that they be decreed such interest in the property. In the other aspect, complainants show, that respondents appropriated the trust property with a fraudulent purpose, in this, that instead of using it as provided in the trust for the benefit of complainants, respondents purchased the railroad property for themselves, or Kelly did for himself, Byrne consenting thereto, us-

[Kelly *et al.* v. Browning *et al.*]

ing the funds of complainants in making the purchase. In the latter aspect, we have the case of a *cestui que trust*, pursuing his money into specific property and praying for a sale for his reimbursement. The case of *Winston v. Mitchell*, 93 Ala. 555, *supra*, is strictly applicable. By the original bill, the complainant averred that the purchase of the property was made with her funds and for her, and prayed that the property be decreed to her. By the amended bill, (amended to meet the evidence under the statute), she averred that the trustee used her money in payment of the property, and prayed that it be declared subject to a trust and sold for her reimbursement. The very objection raised in this case was urged in that case. If the amendment was allowable, it is very clear, that the bill of complaint could have been framed originally in both aspects. The present case is not like that considered in *Ellison v. Moses*, 95 Ala. 22, *supra*, where the money could not be traced, and complainant's remedy was only in a court of law for breach of contract. We attach no importance to the use of the terms in the agreement with reference to the words "sell, alien and release." Construed as an entirety, the agreement leaves no room to doubt the extent and purpose of the sale and transfer of the bonds, and of the trust thereby created.

We are of the opinion that under the averments of the bill, the respondent Byrne is a proper party to the complaint. He was a party to the agreement, and became a trustee or agent for complainant under its provisions. It is averred that the proceeding for the foreclosure of the mortgage was instituted by the respondents, that they proved up their ownership of the bonds, and that Kelly purchased the property with the acquiescence of Byrne. If after answer filed, or the taking of the evidence, it appears that he has no interest in the litigation, the bill can be amended by striking out the name at the proper time. On the demurrer we are of opinion, under the averments, he was properly made a party respondent.

We are of the opinion that the averments of the bill are insufficient to deprive the receiver's certificates of the priority given to them by the order and decree of the court, and hold that Kelly, who became the purchaser,

[Kelly *et al.* v. Browning *et al.*]

may assert a prior lien. True the bill avers in substance that he continued to acquire and use these certificates for his personal advantage, but the bill fails to show that the proceeds were not used *bona fide* in operating the road and widening its gauge and in enhancing its value. These receiver's certificates were issued and invested with a prior lien, with the consent of the bondholders. The case is this: The complainants and respondents owning the first consolidated bonds and mortgage, entered into an agreement for the acquisition of the railroad, and its reorganization upon certain terms. To accomplish this purpose, proceedings for the foreclosure of the mortgage at the instance of the bondholders were instituted, and this proceeding was within the contemplation of the agreement for the reorganization. Pending the foreclosure proceedings, with the consent of the bondholders for the preservation of the property, and the enhancement of its value, the receiver's certificates were ordered and made a prior lien. The rights of complainants and respondents as bondholders and parties to the agreement for reorganization were those of second mortgagees. As agent or trustee, the respondents or Kelly paid off the first lien. In discharging the prior incumbrance (the receiver's certificates) Kelly was benefitted individually, to the extent of his interest in the second lien (that is, the bond mortgage), and complainants were benefitted to the extent of their interest. Under these circumstances the equitable rights of the parties are, that complainants must reimburse Eugene Kelly to the extent of their proportionate interest, and Kelly must be charged with his proportionate share. The complainants submit themselves to the court and offer to do equity. Their interest in the property is chargeable with this equity, and as complainants offer to do equity and submit themselves to the court, the bill is not objectionable in this respect.

The amended bill was filed as a substitute for the original bill. As to subsequent amendments, the amended bill was the only bill, and was referred to as the original bill. It is evident that this was the intention of the pleader, and so understood by the court. The criticisms in this respect are not tenable. There may be some inapt expressions employed in the frame of the bill, but taking it as a whole, and considering its purpose and

[Stafford v. Sibley.]

the averments of facts, we are of opinion that there was no error in overruling each demurrer.

Affirmed.